**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-01506-CMA-KMT

ALEX LOPEZ,

      Plaintiff,

v.

CRICKET COMMUNICATIONS, INC.,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on the Motion for Summary Judgment filed by

Defendant Cricket Communications, Inc.  (Doc. # 39.)  Jurisdiction is proper pursuant to

28 U.S.C. § 1332 (diversity jurisdiction).  For the reasons discussed below, Defendant's

motion is granted.

## I.  BACKGROUND

On July 31, 2009, Plaintiff Alex Lopez applied to work for Defendant.  (Doc. # 45

at 7.)  As part of the five-page job application, Defendant disclosed his driving record.

(*See id.*)  He also initialed several acknowledgments, including the following, which

provides, in pertinent part:

> I hereby authorize Cricket to thoroughly investigate and/or verify my . . .
> Motor Vehicle Report . . . .   In addition, I hereby release the company, my
> former employers and all other persons, corporations, partnerships and
> associates from any and all claims, demands or liabilities arising out of or
> in any way related to such investigation or disclosure.

(Doc. # 39-2 at 5.)  On August 7, 2009, Defendant offered Plaintiff a job that would require him to drive a vehicle and, thus, to comply with Defendant's driving policy.  (*Id.*) Plaintiff accepted the offer the same day.  (Doc. # 32 at 2.)  On August 14, 2009, Defendant informed Plaintiff that his driving record was in compliance with Defendant's policy.  (*See* Doc. # 45 at 7.)  Later that day, Plaintiff resigned from the job he had been working, in order to begin his at-will employment with Defendant.  (*Id.*)

On August 24, 2009, Plaintiff commenced his position with Defendant.  (Doc. # 32 at 2.)  On September 2, 2009, Defendant told Plaintiff that it had again reviewed his driving record and had discovered that it was not, in fact, in compliance with Defendant's driving policy.  (*See* Doc. # 45 at 8.)  This lack of compliance resulted in Defendant terminating Plaintiff in November 2009.  (*Id.*)

Plaintiff filed the instant action on June 9, 2011.  (Doc. # 2.)  In his Amended Complaint, Plaintiff brings claims for negligent misrepresentation and promissory estoppel.  (Doc. # 32 at 3-5.)  On March 1, 2012, Defendant filed a Motion to Partially Dismiss Plaintiff's Complaint (Doc. # 34), and on April 20, 2012, Defendant filed the instant Motion for Summary Judgment (Doc. # 39).  Both motions are ripe for review.[1]

---

[1]   Plaintiff responded to the Motion to Partially Dismiss on March 15, 2012 (Doc. # 37), and Defendant replied on March 28, 2012 (Doc. # 38).  Magistrate Judge Tafoya issued a Recommendation on June 19, 2012, advising the Court to grant Defendant's Motion to Partially Dismiss.  (Doc. # 46.)  Thereafter, Plaintiff filed objections (Doc. # 47), Defendant responded (Doc. # 50), and Plaintiff replied (Doc. # 51).
   As to Defendant's Motion for Summary Judgment, Plaintiff responded on May 7, 2012 (Doc. # 40), and Defendant replied on May 23, 2012 (Doc. # 41).

Because the Court finds that the Motion for Summary Judgment should be granted, the Motion to Partially Dismiss is denied as moot.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.  DISCUSSION

Defendant asserts that Plaintiff's negligent misrepresentation and promissory estoppel claims fail because: (1) Plaintiff expressly waived any and all claims arising out of or in any way related to Defendant's investigation of his driving record; (2) several disclaimers in Defendant's application material prevent Plaintiff from establishing the element of reliance, which is necessary for both of his claims; (3) Plaintiff's own knowledge of his driving record precluded him from reasonably relying on Defendant's initial assertion that his driving record was in compliance with Defendant's policy; (4) Defendant's subsequent review of Plaintiff's driving record was expressly sanctioned

by language in Defendant's policies; and (5) Plaintiff failed to mitigate his damages by

rejecting Defendant's offer of an alternative, non-driving position.  (Doc. # 39 at 2.)

The Court finds meritorious Defendant's first two arguments and, therefore, declines

to address the remaining three.

For negligent misrepresentation claims, Colorado follows the Restatement

(Second) of Torts § 552 (1977), which sets forth the following elements:

> (1)   One who, in the course of his business, profession or employment,
> or in any other transaction in which he has a pecuniary interest, supplies
> false information for the guidance of others in their business transactions,
> is subject to liability for pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.
>
> (2)   . . . the liability stated in Subsection (1) is limited to loss suffered
>
> > (a)  by the person or one of a limited group of persons for whose
> > benefit and guidance he intends to supply the information or knows
> > that the recipient intends to supply it . . . .

*First Nat'l Bank in Lamar v. Collins*, 616 P.2d 154, 155 (Colo. App. 1980); *accord*

*Ebrahimi v. E.F. Hutton & Co.*, 794 P.2d 1015, 1017 (Colo. App. 1989) (citing *Collins*);

*Redies v. Nationwide Mut. Ins. Co.*, 711 F. Supp. 570, 572 (D. Colo. 1989) (same).

For a claim of promissory estoppel, a plaintiff must establish that (1) the

employer reasonably should have expected him to consider the employer's statements

to constitute a commitment; (2) the plaintiff reasonably relied on the employer's

statements to his detriment; and (3) injustice can only be avoided by enforcement of

the statements.  *See, e.g.*, *Johnson v. Cadillac Plastics Grp., Inc.*, 908 F. Supp. 847,

852 (D. Colo. 1995).

However, Colorado law recognizes that a party may waive negligent misrepresentation and quasi-contract claims (such as promissory estoppel) by executing a waiver or release.  "A contract provision purporting to prohibit a party to the contract from asserting a claim of negligent misrepresentation must be couched in clear and specific language."  *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 74 (Colo. 1991); *Student Marketing Grp., Inc., v. College P'ship, Inc.*, Nos. 05-1427, 06-1046, 2007 WL 2269440, at *7 (10th Cir. Aug. 9, 2007) (unpublished) (citing *Keller* and finding that parties' waiver and integration clauses preempted negligent misrepresentation claim as a matter of law).  An agreement's terms fail to be clear and specific when they "are susceptible to more than one reasonable interpretation."  *B & B Livery, Inc., v. Riehl*, 960 P.2d 134, 136 (Colo. 1998).  But mere disagreement between the parties "over the meaning does not in and of itself create an ambiguity . . . ."  *Hamill v. Cheley Colorado Camps, Inc.*, 262 P.3d 945, 950 (Colo. App. 2011).  Ultimately, if unambiguous, an agreement "will be enforced according to the express provision of the agreement."  *Riehl*, 960 P.2d at 136.  In determining whether the intent of the parties has been clearly and unambiguously expressed, Colorado law generally considers whether: (1) the agreement is written in simple and clear terms, which are free from legal jargon; (2) the agreement is inordinately long or complicated; (3) the release specifically addresses the risk that caused the plaintiff's harm; and (4) the agreement contains any emphasis highlighting the importance of the information it contains.

*See Salazar v. On the Trail Rentals, Inc.*, No. 11-cv-00320, 2012 WL 934240, at *4

(D. Colo. Mar. 20, 2012) (unpublished).[2]

In the instant case, the Court finds that the language of Defendant's employment

application was sufficiently clear and specific to preclude Plaintiff's claims.  First, the

above-quoted acknowledgement, which Plaintiff initialed, and below which he signed,

is written in simple and clear terms that eschew legal jargon.  Indeed, Defendant would

have been hard-pressed to have expressed its intentions more clearly than by having

Plaintiff agree to release it from "**any and all claims**, demands or liabilities arising out of

or **in any way related to**" its investigation or disclosure of Plaintiff's driving record.

(Doc. # 39-2 at 5 (emphasis added).)  Second, the entire employment application is

merely five pages long and, of those pages, the acknowledgments Plaintiff initialed only

comprise one page.  (*Id.* at 1-5.)  Accordingly, the agreement is not inordinately long or

complicated.  Third, although the acknowledgments do not specifically address the

possibility that Defendant could err in its initial driving-record review, the disclaimer

language – especially the words emboldened above – effectively put Plaintiff on notice

that he would be precluded from asserting claims based on Defendant's review of his

driving record.  The breadth of such a limitation on liability undercuts Plaintiff's assertion

that the language should not be extended to preclude the claims he raises.  *See*

*Student Marketing Grp., Inc.*, 2007 WL 2269440, at *8 (relying, in part, on the waiver's

"broad limitation on tort and negligence liability").  Fourth, the importance of the

---

[2]  For exculpatory agreements in certain other situations, Colorado law also considers the individual's experience in the activity at issue.  *See Salazar*, 2012 WL 934240, at *4.

information contained in the disclosures was emphasized by the language that immediately preceded them, which stated, in large, bold letters, "Acknowledgement," followed by: "**Directions: Please read this section carefully, <u>initial each paragraph and sign below</u>**." (Doc. # 39-2 at 4.)  Additionally, the requirement that Plaintiff initial each paragraph of disclosures further highlighted the importance of the information they contained, as that requirement was not elsewhere mandated in the application. Accordingly, the Court finds that Plaintiff's express agreement to release Defendant from "any and all claims, demands or liabilities arising out of or in any way related to" Defendant's investigation of Plaintiff's driving record bars his claims here.  *See Brooks v. Timberline Tours, Inc.*, 127 F.3d 1273 (10th Cir. 1997) (holding that negligent misrepresentation claim was precluded by waiver that released defendant "from any and all liability, claims, demands, actions or rights of action, which are related to or are in any way connected with [plaintiff's] participation" in the relevant activity).

Plaintiff's lone argument to the contrary does not require a different conclusion. Plaintiff asserts that Defendant's release concerns the applicant's privacy interests and, therefore, by initialing it he only released Defendant from claims relating to the investigation and disclosure of information concerning such interests.  (Doc. # 40 at 6.) Although the release certainly appears broad enough to cover any associated privacy concerns, Plaintiff fails to offer a convincing argument as to why the release language should be confined to such a limited interpretation.[3]  Rather, as previously indicated, the

---

[3]  Plaintiff's citation to the deposition testimony of Defendant's Human Resources Director, Dan Amerman, is unavailing.  (*See* Doc. # 40 at 3.)  During his deposition, Amerman agreed with Plaintiff's counsel's assertion that Defendant's principal reason for its waiver is "because of

8

release broadly precluded any claims that are "in any way related" to the investigation or disclosure of Plaintiff's driving history.  The instant claims are related to Defendant's investigation of Plaintiff's driving history because such investigation produced the initial mistaken information that Plaintiff's driving record was in compliance with Defendant's policy, as well as the subsequently accurate information that his record was actually not in compliance.

Accordingly, through the release he expressly acknowledged during his employment application, Plaintiff waived any and all claims, including those for negligent misrepresentation and promissory estoppel that he brings here, arising out of or in any way related to Defendant's investigation or disclosure of his driving history.[4]

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 39) be GRANTED.  It is

---

privacy interests by the employees." (Doc. # 40-1 at 6.)  However, Amerman did not foreclose other reasons for the waiver and, more importantly, he was not testifying as a Fed. R. Civ. P. 30(b)(6) witness concerning Defendant's interpretation of the release language.

[4]  The Court also agrees with Defendant that the other disclaimers Plaintiff initialed defeat both of his claims because they preclude him from establishing that he justifiably or reasonably relied on Defendant's August 14, 2009 statement, which erroneously conveyed that Plaintiff's driving record was in compliance with Defendant's policy.  (*See* Doc. # 39-2 at 5.)  Essentially, by agreeing to at-will employment, Plaintiff acknowledged that Defendant's statements were not binding commitments and that Defendant could terminate his employment at any time, with or without cause.  *See Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517 (D. Colo. 1987); *Snoey v. Advanced Forming Tech., Inc.*, 844 F. Supp. 1394, 1399-1400 (D. Colo. 1994); *Kosak v. Catholic Health Initiatives of Colorado*, No. 08-cv-01505, 2009 WL 3497782, at *10-11 (D. Colo. Oct. 28, 2009) (unpublished).

FURTHER ORDERED that Defendant's Motion to Partially Dismiss Plaintiff's Complaint (Doc. # 34), and the attendant Magistrate Judge Recommendation (Doc. # 46), be DENIED AS MOOT.  It is

FURTHER ORDERED that, while each party shall bear its own attorneys' fees, Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within fourteen days of the entry of judgment.  It is

FURTHER ORDERED that the Final Trial Preparation Conference, scheduled for November 9, 2012, and the jury trial, scheduled to begin on November 26, 2012, are VACATED.

DATED:  October __16__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge